IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MAXIMUS, INC., a Virginia corporation, | |
| *Plaintiff,* | Case No.: 2:23-CV-12433-SFC-CI |
| v. | ORAL ARGUMENT REQUESTED |
| APRYL TYLER, | |
| *Defendant.* | |

## MOTION TO PERMANENTLY ENJOIN ARBITRATION

Plaintiff Maximus, Inc. ("Maximus"), by its counsel, Epstein Becker & Green, P.C., hereby moves this Court, pursuant to the Federal Arbitration Act, 9 U.S.C. §§ 1 *et seq.*, Fed. R.. Civ. P. 65, and this Court's inherent powers of equity, for permanent injunctive relief enjoining Defendant Apryl Tyler ("Tyler") from pursuing claims against Maximus that she filed, and which are currently pending, in an arbitration before the American Arbitration Association, captioned *Apryl Tyler v. CoreStaff d/b/a Swipejobs*, Case No. 01-22-0001-6533 ("the Arbitration").  In support of this motion, Maximus relies on the authorities and arguments set forth in its accompanying brief in

support, the Declaration of Nathalie Ohanian, and the Declaration of Adriana S. Kosovych, and exhibits thereto.

Pursuant to Local Rule 7.1, counsel for Maximus states that the relief requested herein has been the subject of submissions to the arbitrator, in which Plaintiff's counsel explained the nature of the request and its legal basis.  Defendant (proceeding *pro se*) expressed opposition to the proposed relief.  The matter has also been the subject of other communications, the most recent of which includes an email sent by Plaintiff's counsel to Defendant seeking her concurrence in the relief sought, which she denied.

WHEREFORE, Maximus respectfully requests that this Court issue an order restraining, and thereafter permanently enjoining, Tyler from pursuing any claims against Maximus in the Arbitration.

Respectfully Submitted,

Dated: September 26, 2023     EPSTEIN BECKER & GREEN, P.C.

By:  */s/ John Houston Pope*
    John Houston Pope
    875 Third Ave.
    New York, NY 10022
    Telephone: (212) 351-4500
    Facsimile: (212) 878-8600
    JHPope@ebglaw.com
    -and-
    Adam S. Forman, P55633
    2000 Town Center, Suite 1900
    Southfield, MI 48075
    Telephone: (248) 351-6287
    Facsimile: (248) 351-2699
    AForman@ebglaw.com

    *Attorneys for Plaintiff Maximus, Inc.*

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MAXIMUS, INC., a Virginia Corporation,<br><br>       *Plaintiff,*<br><br>  v.<br><br>APRYL TYLER,<br><br>       *Defendant.* | Case No.: 2:23-CV-12433-SFC-CI |

## MEMORANDUM IN SUPPORT OF MAXIMUS, INC.'S MOTION TO PERMANENTLY ENJOIN ARBITRATION

## TABLE OF CONTENTS

**Page**

**STATEMENT OF THE ISSUE PRESENTED**...................................3

**CONTROLLING AND LEADING AUTHORITIES**..........................4

**INTRODUCTION** ..............................................................8

**STATEMENT OF FACTS** ..................................................8

**JURISDICTION** ............................................................. 13

**ARGUMENT** ................................................................. 14

**I.  PURSUANT TO THE FEDERAL ARBITRATION ACT, MAXIMUS IS ENTTILED TO ENJOIN PROSECUTION OF AN ARBITRATION TO WHICH IT DID NOT CONSENT** ..... 14

**II.  MAXIMUS ALSO SATISFIES THE TRADITIONAL REQUIREMENTS FOR A PERMANENT INJUNCTION AGAINST TYLER'S PURSUIT OF ARBITRATION** ............. 22

**CONCLUSION** .......................................................... 26

## <u>STATEMENT OF THE ISSUE PRESENTED</u>

The central issue presented by this motion is whether a party may be forced into arbitration where it has not entered into any agreement to arbitrate with the other party and has engaged in no conduct that could be construed to consent to arbitration.

## <u>CONTROLLING AND LEADING AUTHORITIES</u>

**Page(s)**

**Cases**

*MAG Portfolio Consultant, GMBH v. Merlin Biomed. Group LLC,*
268 F.3d 58 (2d Cir. 2001) .......................................................................17

*Am. Banker Ins. Group v. Long,*
453 F.3d 623 (4th Cir. 2006) ................................................... 18

*API, Inc. v. Broadway Elec. Serv. Corp.,*
__ F. Supp. 3d __, 2023 WL 3480875 (W.D. Pa. May 16, 2023) ........................................................................................ 23

*Apollo Computer, Inc. v. Berg,*
886 F.2d 469 (6th Cir. 1989) ................................................... 14

*Avedon Eng'g, Inc. v. Seatex,*
126 F.3d 1279 (10th Cir. 1997) ................................................ 13

*Blanton v. Domino's Pizza Franchising LLC,*
962 F.3d 842 (6th Cir. 2020) ................................................... 16

*Bridas S.A.P.I.C. v. Gov't of Turkmenistan,*
345 F.3d 347 (5th Cir. 2003) ...................................... 15, 17, 18

*CIG Asset Mgmt. v. Bircoll,*
No. 13-CV-13213, 2013 WL 4084763 (E.D. Mich. Aug. 13, 2013) ..................................................................................14, 24

*Coinbase, Inc. v. Bielski,*
143 S. Ct. 1915 (2023) ............................................................ 13

*E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.,*
269 F.3d 187 (3d Cir. 2001) .................................................... 17

*eBay Inc. v. Mercexchange, L.L.C.,*
547 U.S. 388 (2006) ............................................................... 22

*FedEx Ground Pkg. Sys., Inc. v. Vic Jackson Transp., Inc.*
No. 12-CV-2228, 2012 WL 2953218 (D. Kan. July 19, 2012) .................14

*First of Mich. Corp. v. Bramlet,*
141 F.3d 260 (6th Cir. 1998) ...................................................................14

*First Options of Chicago, Inc. v. Kaplan,*
514 U.S. 938 (1995)..................................................................................20

*Floss v. Ryan's Family Steak Houses, Inc.,*
211 F.3d 306 (6th Cir. 2000) ...................................................................13

*Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied
Trades Dist. Council,*
43 F.4th 628 (6th Cir. 2022) ...................................................................21

*Grigson v. Creative Artists Agency, L.L.C.,*
210 F.3d 524 (5th Cir. 2000)...................................................................16

*Javitch v. First Union Sec., Inc.,*
315 F.3d 619 (6th Cir. 2003)............................................................. 15, 18

*Kostopoulos Rodriguez, PLLC v. Green DryClean L3, Inc,*
No. 20-12191, 2020 WL 6544823 (E.D. Mich. Nov. 6, 2020) ...............20

*Maryland Cas. Co. v. Realty Advisory Bd. on Labor Rel.,*
107 F.3d 979 (2d Cir. 1997).....................................................................23

*Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.,*
337 F.3d 125 (2d Cir. 2003).............................................................15, 22

*Morgan Keegan & Co., Inc. v. Louise Silverman Trust,*
No. 11–CV-2533, 2012 WL 113400 (D. Md. Jan. 12, 2012) ...................23

*Morgan Stanley & Co., LLC v. Couch,*
134 F. Supp. 3d 1215 (E.D. Cal. 2015), *aff'd*, 659 Fed. Appx.
402 (9th Cir. 2016) ...................................................................................22

*Morgan Stanley & Co., LLC v. Couch,*
659 Fed. Appx. 402 (9th Cir. 2016).........................................................25

*Morgan Stanley Smith Barney, LLC v. Verble*,
    No. 3:17-CV-175, 2017 WL 3261767 (E.D. Tenn. July 31,
    2017) ................................................................................................ 24

*PaineWebber Inc. v. Hartmann*,
    921 F.2d 507 (3d Cir. 1990) .............................................................21, 22

*Roney & Co. v. Kassab*,
    981 F.2d 894 (6th Cir. 1992) ................................................................21

*Simon v. Pfizer, Inc.*,
    398 F.3d 765 (6th Cir. 2005)................................................................21

*Societe Generale de Surveillance, S.A. v. Raytheon Euro.
    Mgmt. & Sys. Co.*,
    643 F.2d 863 (1st Cir. 1981).................................................................14

*Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*,
    559 U.S. 662 (2010)..............................................................................13

*Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*,
    10 F.3d 753 (11th Cir. 1993) ...............................................................16

*Swiger v. Rosette*,
    989 F.3d 501 (6th Cir. 2021) ...............................................................20

*Town & Country Salida, Inc. v. Dealer Computer Serv., Inc.*,
    521 Fed. Appx. 470 (6th Cir. 2013).......................................................15

*Turi v. Main St. Adoption Serv., LLC*,
    633 F.3d 496 (6th Cir. 2011)...............................................................20

*Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*,
    489 U.S. 468 (1989) .............................................................................13

*Wilson-Davis & Co., Inc. v. Mirgliotta*,
    721 Fed. Appx. 425 (6th Cir. 2018).......................................................14

## Statutes

9 U.S.C. § 4 ..................................................................................................13

28 U.S.C. § 1332(a).......................................................................................12

Federal Arbitration Act ...............................................................................7, 13

**Other Authorities**

Fed. R. Civ. P. 65 ............................................................................... 7

## INTRODUCTION

Defendant Apryl Tyler ("Tyler") improperly added Maximus, Inc. ("Maximus") as a party to an arbitration before the American Arbitration Association ("AAA") that she originally commenced against her former employer, Corestaff d/b/a Swipejobs ("SwipeJobs").  Tyler had an agreement to arbitrate with SwipeJobs.  She pressed forward with her arbitration against SwipeJobs and ultimately resolved it amicably.

Tyler has no agreement to arbitrate with Maximus.  Under the most basic principles governing arbitration, Maximus cannot be compelled to join the AAA arbitration proceeding.  The arbitrator, however, feels differently. In order to defend itself from an improper proceeding, Maximus turns to this Court to enjoin Tyler from continuing with her arbitration.

The relief requested here is available under the Federal Arbitration Act and the Court's inherent powers of equity, channeled through Fed. R. Civ. P. 65.

## STATEMENT OF FACTS

Tyler was an employee of SwipeJobs, a digital staffing company that places temporary workers at various clients across the United States. Ohanian Decl. at ¶ 2.  In connection with Tyler's employment with SwipeJobs, Tyler signed a Mutual Arbitration Agreement ("Arbitration

Agreement") in which Tyler agreed to arbitrate work-related disputes. *Id.* at ¶ 5. Maximus has never seen a copy of the Arbitration Agreement. *Id.* at ¶ 6. It is not a signatory or party to the Arbitration Agreement. *Id.* Its basis for its belief that there is such an agreement is the existence of the arbitration initiated by Tyler against SwipeJobs. *Id.* at ¶ 5.

Maximus does not have any agreement with SwipeJobs that commits it to participate in any arbitration involving SwipeJobs and SwipeJobs' employees. *Id.* at ¶ 4. Maximus does not have any agreement with Tyler in which it agrees to arbitrate any dispute of any kind or subject matter with her. *Id.* at ¶ 7.

Maximus utilized SwipeJobs to staff certain positions on a short-term basis. *Id.* at ¶ 3. Customer Service Representative positions were included among those for which SwipeJobs provided staffing. *Id.* In or about October 2021, SwipeJobs assigned Tyler to support Maximus, on a contingent basis, as a Customer Service Representative. *Id.* at ¶ 8. Tyler failed to report for work, without notice, on five (5) occasions in January and March 2022. *Id.* at ¶ 9. As a result, on March 22, 2022, Maximus requested that SwipeJobs reassign Tyler. *Id.* at ¶ 10. SwipeJobs complied and terminated Tyler's assignment with Maximus. *Id.* Maximus had no role in determining Tyler's employment status with SwipeJobs after she was removed from the

assignment servicing Maximus. *Id.* Upon information and belief, SwipeJobs terminated Tyler's employment. *Id.*

On or around April 20, 2022, Tyler filed a demand for arbitration ("Demand") against SwipeJobs alleging wrongful dismissal. Kosovych Decl. at ¶ 2, Exh. 1 to Kosovych Decl. The total claim amount Tyler sought in the Demand was Fifty-Eight Thousand Dollars ($58,000.00). *Id.* Arbitrator Steven H. Schwartz, Esq. (the "Arbitrator") has presided over the Arbitration. Kosovych Decl. at ¶ 3. Maximus had no role or say in the selection of the Arbitrator. *Id.*

On May 18, 2022, Tyler amended her Demand to include additional claims against SwipeJobs and increased the total claim amount by twenty-fold, to One Million Two Hundred Thousand Dollars ($1,200,000.00) ("Amended Demand"). Kosovych Decl. at ¶ 4, Exh. 2 to Kosovych Decl. On or about July 21, 2022, Tyler submitted a "Clarification of Claims" in which she purportedly further amended the Amended Demand to assert claims in the Arbitration against Maximus for wrongful termination, fraud, and malicious intent. Kosovych Decl. at ¶ 5, Exh. 3 to Kosovych Decl.

On July 28, 2022, the Arbitrator held a case management conference. Kosovych Decl. at ¶ 6. Maximus did not appear or participate in this conference. *Id.* At the conference, counsel for SwipeJobs raised the issue

regarding the scope of the Arbitrator's jurisdiction, including whether the Arbitrator possessed jurisdiction to resolve Tyler's new claims against Maximus. *Id.*

On or about August 25, 2022, the Arbitrator issued an Interim Order Regarding Jurisdiction stating, in pertinent part, that "[t]he claim of wrongful termination against Maximus is deferred, until it is determined whether Claimant wants to bring Maximus as an additional Respondent and, if so, *whether Maximus agrees to the arbitrator's jurisdiction.*" *Id.* at ¶ 7, Exh. 4 to Kosovych Decl. (Emphasis added.) Upon information and belief, on September 16, 2022, Tyler filed a Proof of Service with the AAA stating that she had served Maximus with the Arbitrator's Interim Order Regarding Jurisdiction, the original Demand for Arbitration, the Amended Demand for Arbitration, and Claimant's Clarification of Claims. Kosovych Decl. at ¶ 8.

The Arbitrator held another case management conference on October 21, 2022. *Id.* at ¶ 9. Maximus did not appear or participate in the October 21, 2022 conference. *Id.* Upon information and belief, Tyler sought a default against Maximus for failing to appear in an arbitration proceeding to which it had not consented. *Id.*

The Arbitrator addressed the issue of potential default in his Interim Order Regarding Potential Default Status of Respondent Maximus dated

October 31, 2022. *Id.* at ¶ 10, Exh. 5 to Kosovych Decl. The Interim Order erroneously determined that Maximus should be a party to the arbitration because the Arbitration Agreement between SwipeJobs and Tyler contains a provision that would permit a third-party beneficiary (i.e., a SwipeJobs client) to initiate an arbitration with a SwipeJobs employee for any matter covered by the Arbitration Agreement. Kosovych Decl. at ¶ 11. The Arbitrator made no finding that Maximus authorized or consented to this provision or otherwise agreed to the Arbitrator's jurisdiction. *Id.* The Interim Order also concluded that the Arbitrator had no authority to enter a default against Maximus but stated that he would proceed with the arbitration with Maximus named as a party and would permit Tyler to "present evidence at the hearing to attempt to establish liability and damages caused by Maximus." *Id.*

On January 12, 2023, the Arbitrator issued a Second Arbitration Management Conference Order establishing September 12 and 13, 2023 as hearings dates in connection with the Arbitration. *Id.* at ¶ 12, Exh. 6 to Kosovych Decl. Upon information and belief, which is based on a report from the AAA, in or around March 2023, SwipeJobs reached a settlement with Tyler and was dismissed from the Arbitration. Kosovych Decl. at ¶ 13.

On September 11, 2023, Maximus submitted a letter to the AAA, the Arbitrator, and Tyler, challenging the AAA's jurisdiction over Maximus in arbitration and requesting that the Arbitrator cancel the hearing. *Id.* at ¶ 14. Maximus expressly stated that by submitting the letter challenging the AAA and Arbitrator's jurisdiction, it was not appearing in the Arbitration or submitting to the AAA's jurisdiction. *Id.*

On September 11, 2023, the Arbitrator responded to Maximus' letter recognizing that "it is contrary to the principles of arbitration to proceed with a hearing and issue a subsequent ruling if the arbitrator does not have jurisdiction . . ." *Id.* at ¶ 15, Exh. 7 to Kosovych Decl. The Arbitrator ordered Maximus to file, with a court, "a motion with an appropriate ground challenging the arbitrator's jurisdiction by Tuesday, September 26, 2023" or he would proceed with the Arbitration. *Id.* The Arbitrator has stayed the Arbitration until a court rules on the Arbitrator's authority to hear the matter and any appeal process is concluded. *Id.*

## JURISDICTION

The parties in this action possess completely diverse citizenship (Maximus, Virginia; Tyler, Michigan) and Tyler claims approximately $1,200,000 in damages. This satisfies the requirements of diversity jurisdiction. *See* 28 U.S.C. § 1332(a).

## ARGUMENT

I.  **PURSUANT TO THE FEDERAL ARBITRATION ACT, MAXIMUS IS ENTTILED TO ENJOIN PROSECUTION OF AN ARBITRATION TO WHICH IT DID NOT CONSENT**

"The Federal Arbitration Act governs arbitration agreements." *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1919 (2023). "[T]he FAA imposes certain rules of fundamental importance, including the basic precept that arbitration 'is a matter of consent, not coercion.'" *Stolt-Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010) (quoting *Volt Info. Sci., Inc. v. Bd. of Trs. of Leland Stanford Jr. Univ.*, 489 U.S. 468, 479 (1989)); *Floss v. Ryan's Family Steak Houses, Inc.*, 211 F.3d 306, 314 (6th Cir. 2000) ("the FAA was not enacted to force parties to arbitrate in the absence of an agreement'") (quoting *Avedon Eng'g, Inc. v. Seatex*, 126 F.3d 1279, 1286 (10th Cir. 1997)). Maximus did not consent to arbitration with Tyler. Ohanian Delc. at ¶ 11. This Court must act to prevent it from being coerced to do so.

The FAA empowers the Court to take action. Section 4 (9 U.S.C. § 4) confers judicial authority to compel arbitration when a valid agreement exists and a party refuses to participate. The converse also holds. "[T]o enjoin a party from arbitrating where an agreement to arbitrate is absent is the concomitant of the power to compel arbitration where it is present."

*Societe Generale de Surveillance, S.A. v. Raytheon Euro. Mgmt. & Sys. Co.*, 643 F.2d 863, 868 (1st Cir. 1981); *see also FedEx Ground Pkg. Sys., Inc. v. Vic Jackson Transp., Inc.* No. 12-CV-2228, 2012 WL 2953218, at *2 (D. Kan. July 19, 2012). ("courts have uniformly held that the [FAA] authorizes a federal district court to enjoin an arbitration in appropriate circumstances"). Courts in this Circuit and this District frequently entertain suits of this nature. *See, e.g., Wilson-Davis & Co., Inc. v. Mirgliotta*, 721 Fed. Appx. 425 (6th Cir. 2018) (ordering arbitration); *First of Mich. Corp. v. Bramlet*, 141 F.3d 260 (6th Cir. 1998) (reversing dismissal for improper venue); *Apollo Computer, Inc. v. Berg*, 886 F.2d 469 (6th Cir. 1989) (affirming denial of stay); *CIG Asset Mgmt. v. Bircoll,* No. 13-CV-13213, 2013 WL 4084763, at *2 (E.D. Mich. Aug. 13, 2013) (collecting cases).

The question raised is simple: may a party who has not entered into an arbitration agreement with another party be compelled to arbitrate?  Given the nature of arbitration, which is based entirely on the parties' consent to the arbitral forum, the answer appears obvious: *no*.

One fact cannot be disputed: Maximus is not a signatory to the Arbitration Agreement, the basis upon which Tyler seeks to arbitrate her claims against Maximus. Ohanian Delc. at ¶ 6. That fact should be sufficient

to grant this motion.  Nonsignatories to an arbitration agreement rarely can be compelled to arbitrate.

That being said, Maximus concedes that this general principle admits limited exceptions, which the party seeking to require arbitration has the burden to establish.  *See, e.g., Merrill Lynch Inv. Mgrs. v. Optibase, Ltd.*, 337 F.3d 125, 131 (2d Cir. 2003); *see also Town & Country Salida, Inc. v. Dealer Computer Serv., Inc.*, 521 Fed. Appx. 470, 475 (6th Cir. 2013).  "Six theories for binding a nonsignatory to an arbitration agreement have been recognized: (a) incorporation by reference; (b) assumption; (c) agency; (d) veil-piercing/alter ego; (e) estoppel; and (f) third-party beneficiary."  *Bridas S.A.P.I.C. v. Gov't of Turkmenistan*, 345 F.3d 347, 356 (5th Cir. 2003); *see also Javitch v. First Union Sec., Inc.*, 315 F.3d 619, 629 (6th Cir. 2003).  The first four of these theories do not apply as a matter of fact; the last two cannot be applied as a matter of law (or fact).

No agreement to which Maximus is a party incorporates the Arbitration Agreement by reference, ruling out exception (a).  Maximus has not undertaken to assume the responsibilities of the Arbitration Agreement, ruling out exception (b).  Maximus did not authorize SwipeJobs to enter into the Arbitration Agreement on its behalf, ruling out exception (c).  And

SwipeJobs is neither an alter ego nor a corporate veil behind which Maximus hides, ruling out exception (d).

The last two exception theories, estoppel and third-party beneficiary, fail as a matter of law because they work only when used to bind a signatory to arbitrate with a nonsignatory at the nonsignatory's insistence, and not the reverse, or to force a nonsignatory to assume the arbitration obligation of an agreement if the nonsignatory sues to enforce the agreement's terms. As a consequence, Tyler could not rely on either theory to bind Maximus to arbitration here.

Estoppel has two versions: "intertwined claims" and "direct benefits" theories. The intertwined claims version works against signatories when a nonsignatory wants to enforce an arbitration obligation. Estoppel prevents the signatory party from relying upon the other party's status as a nonsignatory to avoid arbitration when the signatory has raised allegations of substantially interdependent and concerted misconduct by the nonsignatory that the signatory must arbitrate with one or more of the signatories to the contract. *See, e.g., Grigson v. Creative Artists Agency, L.L.C.*, 210 F.3d 524, 527 (5th Cir. 2000); *Sunkist Soft Drinks, Inc. v. Sunkist Growers, Inc.*, 10 F.3d 753, 757 (11th Cir. 1993). The nonsignatory in such circumstances – sometimes called a "consenting nonsignatory," *see Blanton*

*v. Domino's Pizza Franchising LLC*, 962 F.3d 842, 849 (6th Cir. 2020) – wants to arbitrate its claims together with the signatories entitled to compel arbitration.

Tyler would ask this Court to "flip the script" and let her, as the only signatory to the Arbitration Agreement, drag Maximus into an arbitration, against its will, because she wants to bring claims against Maximus she asserts are intertwined with the ones she made against (and settled with) SwipeJobs. The theory does not work in that direction. "[B]ecause arbitration is guided by contract principles, … a signatory may not estop a nonsignatory from avoiding arbitration regardless of how closely affiliated that nonsignatory is with another signing party." *MAG Portfolio Consultant, GMBH v. Merlin Biomed. Group LLC*, 268 F.3d 58, 62 (2d Cir. 2001); *accord Briads SAPIC*, 345 F.3d at 361; *E.I. DuPont de Nemours & Co. v. Rhone Poulenc Fiber & Resin Intermediates, S.A.S.*, 269 F.3d 187, 202 (3d Cir. 2001).

The direct benefits theory of estoppel does not apply here because it does not fit the factual background of this case. "Under [this] theory, courts prevent a non-signatory from embracing a contract, and then turning its back on the portions of the contract, such as an arbitration clause, that it finds distasteful." *E.I. DuPont*, 269 F.3d at 200. The prototypical example

appears in *Javitch*, where a receiver sued signatories to an agreement that contained an arbitration clause, for claims based on the agreement, and then tried to disavow the arbitration clause because the receiver himself was not a signatory. *See Javitch*, 315 F.3d at 629.  This case does not fit within that description.  Maximus does not seek to enforce any agreement between SwipeJobs and Tyler. Ohanian Delc. at ¶ 5, 6, 7, 11.  In any event, the direct benefits theory cannot be applied unless "the nonsignatory had brought suit against a signatory premised in part upon the agreement." *Bridas S.A.P.I.C.*, 345 F.3d at 347; *see also Am. Banker Ins. Group v. Long*, 453 F.3d 623, 627-28 (4th Cir. 2006).  Maximus did not commence the underling suit and therefore this version of estoppel theory cannot establish any obligation to arbitrate on its part.

The analysis of the third-party beneficiary exception presents an amalgam of the foregoing analysis with some differences.  An important predicate to applying the exception is a determination of third-party beneficiary status under the agreement that provides for arbitration. Because Maximus does not have a copy of the Arbitration Agreement, it cannot ask the Court to reach a conclusion on that predicate at this stage. Ohanian Decl. at ¶ 6. Nonetheless, the exception's application can be ruled out as a matter of law.

The third-party beneficiary theory has been applied in only two instances (which echo the application of estoppel theory): (1) when a nonsignatory third-party beneficiary seeks to force a signatory to arbitrate claims; and (2) when the third-party beneficiary initiates an action in court seeking to enforce its third-party rights under the agreement that contains the arbitration clause. According to a provision quoted by the Arbitrator in his Interim Order, the Arbitration Agreement apparently expressly authorizes the first instance; Maximus, if it is a third-party beneficiary, could force Tyler into arbitration of her claims. Kosovych Decl. at ¶ 10, 11, Exh. 5 to Kosovych Decl. But Maximus does not want to do that. Ohanian Decl. at ¶ 11. Thus, Tyler would have to qualify to apply this exception under the second instance. Maximus, however, did not initiate any proceeding or seek to enforce any alleged third-party rights under the Arbitration Agreement. That ends any inquiry on the use of this exception.

Indeed, in 2020 Judge Cleland stated sound advice about applying this exception, stating that "the limited third-party beneficiary exception" should not be transformed "into a tool that could be used to force non-consenting, non-signatory third-parties into binding arbitration. How courts interpret agreements to arbitrate is 'inexorably' linked to the idea 'that arbitration is simply a matter of contract between the parties.' The third-party exception

should not be allowed to swallow this general rule by forcing a third-party, who derives no other benefit from the agreements, to arbitrate disputes under the contractual parties' chosen rules." *Kostopoulos Rodriguez, PLLC v. Green DryClean L3, Inc*, No. 20-12191, 2020 WL 6544823, at *7 (E.D. Mich. Nov. 6, 2020) (quoting *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 943 (1995)).

The exceptions to the general rule rejecting compulsory arbitration for a nonsignatory party, then, do not confer any basis to coerce Maximus into arbitration with Tyler.  What of the arbitrator's view that Maximus should be subject to his jurisdiction?  Questions of arbitrability sometimes get delegated to the arbitrator to resolve.  But that's only when the existence of an agreement to arbitrate is not in dispute.  *See, e.g., Swiger v. Rosette*, 989 F.3d 501, 507 (6th Cir. 2021); *Turi v. Main St. Adoption Serv., LLC*, 633 F.3d 496, 507 (6th Cir. 2011) (endorsing proposition "that the parties' delegation to the arbitrator of decisions regarding arbitrability applies only where a *prima facie* agreement to arbitrate exists") (quotation omitted).  An arbitrator's authority to decide arbitrability depends upon the parties' agreement to have the arbitrator decide such issues.  A court thus must decide if the parties have an agreement, when one objects, and whether the agreement (if it exists) leaves the decision regarding arbitrability to the

arbitrator. *See, e.g.*, *Greenhouse Holdings, LLC v. Int'l Union of Painters & Allied Trades Dist. Council*, 43 F.4th 628, 632-33 (6th Cir. 2022); *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 514 (3d Cir. 1990) ("[T]he Supreme Court has clearly and repeatedly stated that a party cannot be required to submit to arbitration any dispute which he has not agreed so to submit. The logical corollary of this policy is that a party cannot be required to arbitrate the threshold 'dispute,' as it were, of whether the underlying dispute is itself arbitrable.") (cleaned up); *accord Roney & Co. v. Kassab*, 981 F.2d 894, 897-98 (6th Cir. 1992).

All of this circles back to "[a] longstanding principle of this Circuit … that no matter how strongly the federal policy favors arbitration, arbitration is a matter of contract between the parties, and one cannot be required to submit to arbitration a dispute which it has not agreed to submit to arbitration." *Simon v. Pfizer, Inc.*, 398 F.3d 765, 775 (6th Cir. 2005) (cleaned up). Maximus did not agree to submit Tyler's claims to arbitration. The FAA authorizes this Court to enjoin the Arbitration.

## II.   MAXIMUS ALSO SATISFIES THE TRADITIONAL REQUIREMENTS FOR A PERMANENT INJUNCTION AGAINST TYLER'S PURSUIT OF ARBITRATION

If the Court does not consider the FAA sufficient authority to enjoin Tyler from pursuing arbitration, Maximus also satisfies the well-worn test

for permanent injunctive relief.  "A permanent injunction is warranted where the moving party establishes that: (1) it has suffered an irreparable injury; (2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) the public interest would not be disserved by a permanent injunction." *eBay Inc. v. Mercexchange, L.L.C.*, 547 U.S. 388, 391 (2006).

Regarding the first element of this test, as the Third Circuit has held, "the harm to a party would be *per se* irreparable if a court were to abdicate its responsibility to determine the scope of the arbitrator's jurisdiction and, instead, were to compel the party, who has not agreed to do so, to submit to an arbitrator's own determination of his authority." *PaineWebber Inc. v. Hartmann*, 921 F.2d 507, 515 (3d Cir. 1990); *accord Merrill Lynch Inv. Managers v. Optibase, Ltd.,* 337 F.3d 125, 129 (2d Cir. 2003); *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1235-36 (E.D. Cal. 2015) ("[M]ost, if not all courts hold that being required to arbitrate a dispute that the parties did not agree to arbitrate is *per se* irreparable harm."), *aff'd*, 659 Fed. Appx. 402 (9th Cir. 2016).  The reasons seem apparent enough.  It is an invasion of Maximus' legal rights to foist upon it arbitration, a process founded on consent, against its will and over its objection with only an

ephemeral promise to consider relief later.  Consent, not coercion, must rule the day.  Further, "[i]f parties were forced to litigate a case to conclusion in arbitration, only to later determine that the arbitrator(s) lacked jurisdiction – rendering the proceedings a nullity – the parties would not only have been forced to waste resources, but also time.  There is truth to the adage that justice delayed is justice denied." *API, Inc. v. Broadway Elec. Serv. Corp.*, ___ F. Supp. 3d ___, 2023 WL 3480875, at *5 (W.D. Pa. May 16, 2023).  Additionally, coerced arbitration deprives a party of a judicial forum for airing its claims or defenses, a valuable right in and of itself.  *See, e.g., Morgan Keegan & Co., Inc. v. Louise Silverman Trust*, No. 11–CV-2533, 2012 WL 113400, at *5 (D. Md. Jan. 12, 2012).

The second element, inadequate remedies available at law, overlaps with irreparable injury.  Presumably it would be argued that Maximus should arbitrate and then seek to vacate the award on the basis that the award exceeded the jurisdiction of the arbitrator.  Of course, the standard for judicial review of an arbitration award is exceedingly narrow, placing Maximus at a procedural disadvantage if it is forced to wait until after an arbitration proceeding occurred to challenge the glaring absence of the arbitrator's authority.  And Maximus cannot recover the expenses it incurs in arbitration. *See, e.g., Maryland Cas. Co. v. Realty Advisory Bd. on Labor*

*Rel.*, 107 F.3d 979, 985 (2d Cir. 1997); *Morgan Stanley Smith Barney, LLC v. Verble*, No. 3:17-CV-175, 2017 WL 3261767, at *7 (E.D. Tenn. July 31, 2017).

The balance of hardships weighs in favor of enjoining the Arbitration. As set forth above, Maximus suffers great harm by being sent to arbitration. By contrast, the only consequence to Tyler if the Court grants a permanent injunction is that she would have pursue her claims against Maximus in a court of competent jurisdiction. *See, e.g.*, *CIG Asset Mgmt.*, 2014 WL 4059832, at *3 (granting plaintiff's permanent injunctive relief where "the only harm for [defendants] is they would have to pursue claims in … court"). The potential harm to Maximus significantly outweighs the potential harm to Tyler. The balance of hardships thus favors enjoining the Arbitration.

The public interest factor also supports enjoining Tyler from pursuing the Arbitration against Maximus. No interest, public or otherwise, favors compelling parties to arbitrate claims that they have not agreed to arbitrate. To the contrary, "[p]ublic policy does not favor forcing parties who have not agreed to arbitrate to submit to arbitration against their will. Doing so would undermine the public's confidence in arbitration as a useful form of alternative dispute resolution, and discourage arbitration." *CIG Asset Mgmt.*, 2014 WL 4059832, at *3. Moreover, forcing an arbitration to occur,

then entertaining the relief to which Maximus would be entitled (vacating the award), "would only serve to complicate and extend the proceedings." *Morgan Stanley & Co., LLC v. Couch*, 659 Fed. Appx. 402, 406 (9th Cir. 2016). Accordingly, the public interest weighs solidly in favor of enjoining the Arbitration.

The sum total of the traditional injunctive relief analysis reaches the same conclusion as the FAA analysis: Tyler should be enjoined from pursuing the Arbitration against Maximus. The Court should so order.

## **CONCLUSION**

Consistent with the foregoing, the Court should grant Maximus' motion and enter an order enjoining Tyler from pursuing and prosecuting the Arbitration and granting such other relief as is just and proper in the circumstances.

Respectfully Submitted,

Dated: September 26, 2023      EPSTEIN BECKER & GREEN, P.C.

By: */s/ John Houston Pope*
     John Houston Pope
     875 Third Ave.
     New York, NY 10022
     Telephone: (212) 351-4500
     Facsimile: (212) 878-8600
     JHPope@ebglaw.com
     -and-
     Adam S. Forman, P55633
     2000 Town Center, Suite 1900
     Southfield, MI 48075
     Telephone: (248) 351-6287
     Facsimile: (248) 351-2699
     AForman@ebglaw.com

     *Attorneys for Plaintiff Maximus, Inc.*