UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF MICHIGAN

| | |
|---|---|
| MAXIMUS, INC., a Virginia corporation,<br><br>Plaintiff,<br><br>V,<br><br>APRYL TYLER, an individual,<br><br>Defendant. | Case No 2:23−cv−12433−SFC−CI<br>District Judge Sean F. Cox<br><br><br>**PROOF OF SERVICE**<br><br>On Monday, October 16, 2023 I personally deposited in a receptacle of the US mail with first class postage affixed, envelopes containing this document, with all attachments, addressed to the parties appearing in this action as identified in the caption herein. Also, via email to documented attorney to be notified.<br><br>x _[signature]_ |
| John H. Pope<br><br>Epstein Becker & Green, P.C.<br><br>875 Third Avenue<br><br>New York, NY 10022<br><br>(212) 351-4500<br><br>JHpope@ebglaw.com | Apryl Tyler<br><br>Pro Se<br><br>PO Box 1884<br><br>Royal Oak, MI 48068<br><br>(248) 275-6361<br><br>apryltyler@yahoo.com |

# DEFENDANTS' BRIEF IN SUPPORT OF OPPOSITION TO PLAINTIFFS' MOTION TO PERMANENTLY ENJOIN ARBITRATION

1

NOW COMES Apryl Tyler, by and through Pro Se, and respectfully oppose Plaintiffs' Motion to Permanently Enjoin Arbitration as follows:

## STATEMENT OF FACTS

1. Defendant became a contracted employee for Plaintiff through temporary agency named Corestaff on a governmental project effective 8/9/2021. Defendant's position title, Customer Service Representative for Arizona Unemployment Insurance. Project/contract end date of October 2021. (Exhibit 1)

2. Plaintiff asked for Defendant to rejoin another governmental project effective 10/20/2021. Defendant's position title, Customer Service Representative for Arizona Homeowner Assistance Fund. (Exhibit 2)

3. On 3/23/22, Defendant was notified per Corestaff of termination from Plaintiff due to six No Call No Shows. Dates listed as 12/17/2021, 1/14/2022, 1/18/2022, 1/19/2022, 1/21/2022, and 3/14/2022. (Exhibit 3)

4. Date 12/17/2021 was removed from NCNS list after in house investigation.

5. All NCNS dates listed in January were due to Defendant having COVID-19 with Plaintiffs prior knowledge of not attending work. (Exhibit 4)

6. Date 3/14/2022 NCNS was due to Defendant having technical issues and Plaintiff informed Defendant to log out of work for the day.

7. On 4/20/2022 Defendant filed Demand for Arbitration with the American Arbitration Association solely against Corestaff as Mutual Arbitration Agreement states. (Exhibit 5)

2

8. From the arbitrator lists submitted from The American Arbitration Association they appointed Steven Schwartz on 6/29/2022. Neither party chose Arbitrator Schwartz. (Exhibit 6 and 25)

9. Corestaff did not wish to take responsibility for claims pertaining to Maximus. In the 08/25/2022 Order Regarding Jurisdiction, the arbitrator deferred a decision whether he had jurisdiction to consider the claims against Plaintiff. (Exhibit 7)

10. Defendant served Plaintiff with Interim Order Regarding Jurisdiction, Original Demand for Arbitration, Amended Demand for Arbitration on 9/16/2022. Plaintiff did not respond. (Exhibit 8)

11. On 10/31/2022, Interim Order Regarding Potential Default Status of Respondent Maximus was entered. Corestaff admits speaking with Plaintiffs Legal Counsel. (Exhibit 10)

12. On 1/24/2023, Plaintiff was notified by the American Arbitration Association of held Management Conference on 1/11/2023. Plaintiff did not respond. (Exhibit 9)

13. Corestaff served Plaintiff with Second Arbitration Management Conference Order and Interim Order Regarding Potential Default Status of Respondent Maximus on 1/30/2023. Plaintiff did not respond. (Exhibit 11 and Exhibit 13)

14. Plaintiff was made aware of Discovery deadline of 3/31/2023. Plaintiff did not participate in discovery.

15. The American Arbitration Association notified Plaintiff of Corestaff and Defendants resolved claims on 4/11/2023. Plaintiff did not respond. (Exhibit 12)

16. The American Arbitration Association notified Plaintiff of unresolved invoice. Plaintiff did respond on 5/1/2023, stating that the invoice was an error because Plaintiff never participated in Arbitration. (Exhibit 14)

17. On 5/30/2023, Plaintiff emailed the American Arbitration Association acknowledging lack of response in Arbitrators rulings. (Exhibit 15)

18. On 5/30/2023, Defendant sent Plaintiff via email Interim Order Regarding Potential Default Status of Respondent Maximus, Second Arbitration Management Conference Order, Proof of Service from Corestaffs Legal Representative, The American Arbitration Association confirmation of held Management Conference, and The American Arbitration Association confirmation of resolved claims regarding Corestaff. Plaintiff did not respond. (Exhibit 16)

19. Plaintiff was made aware of Exhibit and Final Witness Exchange deadline of 8/29/2023. Plaintiff did not participate in the exchange.

20. Plaintiff was made aware of prehearing Management Conference call on 9/6/2023. Plaintiff did not participate in the conference.

21. On 9/11/2023, Plaintiff objects to the arbitrator's jurisdiction after presented with Defendants exhibits and subpoena for witness one day before scheduled Evidentiary Hearing. (Exhibit 17 and 18)

22. On 9/11/2023, Arbitrator Schwartz responded to pause arbitration pursuant Plaintiff files a motion with the appropriate court regarding jurisdiction. (Exhibit 19)

23. Defendant seeks arbitration as the final amend to claims dated 2/17/2023, are malicious intent and fraud with a compensation of $1,200,000.

24. Plaintiffs Legal Representative was made aware of amended claims on 9/11/2023. (Exhibit 20 21 and 26)

25. On 9/14/2023, Plaintiff states to the American Arbitration Association that if the Arbitrator or the American Arbitration Association does not withdraw claims Defendant will file a lawsuit against the American Arbitration Association and Arbitrator. (Exhibit 22 and 23)

26. Defendants' argument is that all no call no show dates are a violation of Plaintiffs' policies and procedures and are done with malice including fraud.

27. Defendant followed all Plaintiffs' policies and procedures to not receive No Call No Show dates that ultimately lead to Defendants termination. (Exhibit 24)

# RULES

Per Arbitrator Schwartz Interim Order Regarding Jurisdiction dated 10/31/2022:

ARBITRATION AGREEMENT AND AAA RULES

(1) Mutual Arbitration Agreement

The parties entered into a Mutual Arbitration Agreement, which in relevant part states (emphasis added):

I. Introduction

Swipejobs, Inc., its subsidiaries and affiliates . . . ("Company", "we", or our") believes that most work-related concerns can be addressed internally with the employees' manager. . . Where resolution cannot be achieved through the Company's internal resources, the undersigned employee, his/her heirs, executors, administrators, successors, and assigns ("Employee") and the Company agrees to use the arbitration procedures in this Agreement instead of a trial in court before a judge or jury. . . If Employee accepts or continues employment with the Company, both Employee and the Company will be bound by its terms.

II. Covered Claims and Disputes

Other than as provided in this Agreement, to the maximum extent permissible under federal law, Employee and the Company agree that any controversy, dispute, or claim relating to Employee's employment or association with the Company that could otherwise be raised in court that the Company has against Employee or that Employee has against the Company or its current or former officers, directors, members, employees, vendors, clients, customers, work assignment partners, agents, parents, subsidiaries, affiliated companies, successors, or assigns, shall be settled exclusively by binding arbitration rather than in court. This agreement to arbitrate includes but is not limited to any controversy, dispute, or claim relating to or arising under this Agreement; any assignment with the Company's customers, clients, or worksite partners; or the relationship between Employee and the Company.

Covered claims include, but are not limited to, claims for wages and other compensation, breach of contract, misappropriation of trade secrets or unfair competition, violation of public policy, wrongful termination, tort claims; claims for unlawful retaliation, discrimination and/or harassment; and claims for violation of any federal, state or other government law; statute, regulation, or ordinance, such as, for example, claims under the Age Discrimination in Employment Act, the Americans with Disabilities Act; Title VII of the Civil Rights Act of 1964; the Equal Pay Act; the Fair Credit Reporting Act; the Fair Labor Standards Act; the Family and Medical Leave Act; the Pregnancy Discrimination Act; the Rehabilitation Act; Section 1981 through 1988 of Title 42 of the United States Code; and/or the Worker Adjustment and Retraining Notification Act.

It is the parties' intent that unless specifically excluded by the Agreement, all claims covered by the Agreement are to be resolved through arbitration and not in a court proceeding, to the fullest extent permitted by federal law. . . .

V.   Authority to Determine Arbitrability

Except as provide in Section IV [Waiver of Class, Collective and Representative Actions], and except if a party requests provisional relief from a court of competent jurisdiction to preserve the *status quo* pending arbitration, the arbitrator shall have the exclusive authority to resolve any dispute relating to the arbitrability of any individual claim or the enforceability or formation of this Agreement (including all defenses to contract enforcement, such as, for example, waiver of the right to compel arbitration).  Enforcement of this Agreement may not be precluded or delayed on the grounds that (1) a party to this Agreement also is a party to a pending court action or special proceeding with a third party arising out of the same transaction or series of related transaction, or (2) a party to this Agreement asserts arbitrable and non-arbitrable claims.

VI. Arbitration Procedures

. . . For the Company or any third-party beneficiary of this Agreement to initiate arbitration, it must deliver the written demand, signed by the Company or third-party beneficiary, for arbitration to Employee at the last known address recorded in the Employee's personnel records.

. . . The Employment Arbitration Rules and Mediation Procedures ("AAA Rules"), or the employment rules of the arbitration service used, shall govern the arbitration proceeding . . .

. . . Each party shall have the right to file dispositive motions pursuant to the Federal Rule of Civil Procedures in the jurisdiction in which the arbitration is conducted (including without limitation motions to dismiss or for summary judgment).

VII. Governing Law, Consideration, Severability, Final Agreement, and Survival

. . . If Employee does not primary reside and work in California, and to the extent permitted by law, (a) this Agreement shall be construed in accordance with the laws of the State of Texas, without regard to conflict of laws principles; . . .

(2) AAA Rules

Rule 6: Jurisdiction

a. The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope or validity of the arbitration agreement.

b. The arbitrator shall have the power to determine the existence or validity of a contract of which an arbitration clause forms a part. Such an arbitration clause shall be treated as an agreement independent of the other terms of the contract. A decision by the arbitrator that the contract is null and void shall not for that reason alone render invalid the arbitration clause.

    c. A party must object to the jurisdiction of the arbitrator or the arbitrability of a claim or counterclaim no later than the filing of the answering statement to the claim or counterclaim that gives rise to the objection. The arbitrator may rule on such objections as a preliminary matter or as part of the final award.

1. Rule 27: Dispositive Motions

The arbitrator may allow the filing of a dispositive motion if the arbitrator determines that the moving party has shown substantial cause that the motion is likely to succeed and dispose of or narrow the issues in the case.

# LAW

Per Arbitrator Schwartz Interim Order Regarding Jurisdiction dated 10/31/2022:

    As a general rule, Texas law is well settled that an entity that did not sign an arbitration agreement may not be compelled to participate in arbitration. *In re Kellog Brown & Root, Inc*., 166 S.W.3d 732, 48 Tex. Sup. Ct. J. 678 (2005); *Elgohary v. Herrera*, 405 S.W.3d 785 (2013). However, a third-party beneficiary to an arbitration agreement may be subject to arbitration. *In re Great Western Drilling, Ltd*., 211 S.W.3d 828 (2006); *Elgohary*, 405 S.W.3d at 793. The Texas Court of Appeals ordered arbitration for a joint employer who was not a signer to the arbitration agreement between the employee and the other employer:

> In certain instances, a nonparty may be compelled to arbitrate, if it deliberately seeks and obtains substantial benefits from the contract itself. The analysis involved focuses on the nonparty's conduct during the performance of the contract. . . Furthermore, a non-signatory may be bound to an arbitration agreement on the ground of equitable estoppel. . .

> Federal courts have limited estoppel in that context to cases involving non-signatories who, during the life of the contract, have embraced the contract, seeking to derive direct benefits from it, but then, during litigation, attempt to repudiate the arbitration clause in the contract. *Id.* . . .
>
> [A] nonsignatory who deliberately seeks or obtains substantial benefits from the contract itself may be compelled to arbitrate claims against a signatory to the contract. The reviewing court's analysis focuses on the nonparty's conduct during the performance of the contract. . .
>
> Here, [the non-signatory co-employer] received benefits under the joint-employment agreement and Dispute Resolution Plan. We find that under this substantial benefits type of equitable estoppel, the court should have granted the motion to compel arbitration. However, this is true regarding only those claims arising during the period the arbitration agreements were in effect.
> *In re Polymerica, LLC*, 271 S.W.3d 442, 448 – 450 (2008).

Section II of the Mutual Arbitration Agreement states that "to the maximum extent permissible under federal law", an employee's claims against Respondent's "clients, customers, work assignment partners . . .shall be settled exclusively by binding arbitration rather than in court". Given the limited knowledge that the arbitrator has at this point about the business relationship between them, Maximus is probably a "client, customer or work assignment partner" of Respondent. If that premise is correct, it would be expressly covered by the arbitration agreement and would be a third-party beneficiary of that agreement.

… If Maximus does not agree to submit to arbitration, a more complete evidentiary record needs to be established, as to the contractual relationship between Maximus and Respondent, whether Respondent agreed to defend Maximus in arbitration, or vice versa, and which entity, or both, controlled decisions over termination…

I.  Texas Intertwined Claims Estoppel
    Compelling arbitration when a non-signatory defendant has a 'close relationship' with one of the signatories and the claims are 'intimately founded in and intertwined with the underlying contract obligations.

10

## CONCLUSION

IN CONCLUSION, Defendant is requesting Plaintiffs Motion to Permanently Enjoin Arbitration be dismissed and/or denied:

    I.    Texas Intertwined Claims Estoppel
    II.   Failure to comply with the American Arbitration Association

_____

Apryl Tyler

Pro Se

October 14, 2023

I declare under penalty of perjury that the foregoing is true and correct.