UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAXIMUS, INC.,

        Plaintiff,                           Case No. 23-cv-12433

v.

                                        Hon. Sean F. Cox
APRYL TYLER,                       United States District Court Judge

        Defendant.

### OPINION & ORDER GRANTING IN PART PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND INJUNCTIVE RELIEF HALTING ARBITRATION (ECF No. 20)

This case comes before the Court on an arbitration dispute. Unlike the usual arbitration dispute where a party seeks a determination that it agreed to arbitrate certain claims and asks the Court to ship those claims to arbitration, the plaintiff here asks the Court to declare that it *did not* agree to arbitrate claims that the defendant in this case is currently pursuing against it in an arbitral forum. The Court enjoined the defendant in this case from prosecuting those arbitration proceedings pending an evidentiary hearing, and the Court now enjoins the defendant from prosecuting those arbitration proceedings until the Court resolves whether the plaintiff in this case ever agreed to arbitrate those claims.

### BACKGROUND

The plaintiff, Maximus, Inc. ("Maximus"), filed the operative complaint in this case, the First Amended Complaint ("FAC"), on February 13, 2024. (ECF No. 10). The FAC alleges that the defendant, Apryl Tyler, who is *pro se*, signed an arbitration agreement with a staffing agency (the "Agreement") and that agency placed her with Maximus to perform work on a temporary basis. The FAC contends that Maximus is not a party to the Agreement, but that Tyler is

1

nonetheless prosecuting employment-related claims against it before the American Arbitration Association ("AAA") pursuant to the Agreement's terms (the "Arbitration").

The FAC invokes the Court's diversity jurisdiction and asserts two claims. Count I seeks "an order enjoining Tyler from prosecuting any arbitration proceeding against Maximus" under Michigan's Uniform Arbitration Act. (*Id.* at 269). And Count II seeks a declaratory judgment that Maximus is not a party to the Agreement.

On March 15, 2024, Maximus moved for an order under Fed. R. Civ. P. 65 enjoining Tyler from prosecuting the Arbitration. (ECF No. 20). On March 25, 2024, the Court issued a temporary restraining order ("TRO") enjoining Tyler from prosecuting the Arbitration pending an evidentiary hearing.[1] (ECF No. 24). The Court held that evidentiary hearing on May 30, 2024, where Maximus offered testimony from its associate general counsel, Tom Pierce, by affidavit. (Pl.'s Ex. 1). Pierce asserted the following relevant facts.

Maximus provides health and human services programs to local, state, and federal government agencies, and it utilizes many contingent workers in its operations. In 2007, Maximus contracted with Bartech Group, Inc. ("Bartech") to coordinate Maximus's contingent work force. (Pl.'s Ex. 12). Bartech was later acquired by Impellam Group PLC ("Impellam"), which assumed Bartech's obligations to Maximus.

In 2016, Impellam contracted with a company called Corestaff to staff positions for Maximus. (Pl.'s Ex. 13). Corestaff hired Tyler on August 9, 2021, and it assigned her to perform work as a customer service representative for Maximus on projects Maximus had been contracted to complete for the State of Arizona sometime after. Corestaff was acquired by

---

[1] Maximus did not seek, and the Court did not grant, that TRO on an *ex parte* basis. The Court reviewed a brief that Tyler filed in opposition to Maximus's motion for an injunction (*see* ECF No. 22) and the Court held a hearing on March 25, 2023.

Swipejobs, Inc. ("Swipejobs") in January 2022 (Pl.'s Ex. 11), and Swipejobs assumed Corestaff's obligations to Impellam.

Following that acquisition, Tyler and Swipejobs signed an arbitration agreement—the Agreement—on February 6, 2022.  (Pl.'s Ex. 1).  Maximus is not a signatory to the Agreement and Maximus and Tyler never concluded any other arbitration agreement.  And Maximus has no direct contact with third-party staffing agencies such as Corestaff and Swipejobs; Maximus communicates with Impellam directly regarding all staffing issues.

Maximus subsequently asked Impellam to reassign Tyler after she failed to show up for work on five separate occasions without notice from January to March 2022.  Impellam communicated Maximus's request to Swipejobs, which removed Tyler from her position with Maximus.  (Pl.'s Ex. 9).  Swipejobs ultimately terminated Tyler's employment altogether on March 22, 2022.

On April 20, 2022, Tyler initiated arbitration proceedings against Swipejobs before the AAA for wrongful dismissal in a case captioned *Apryl Tyler v. Corestaff d/b/a Swipejobs*, No. 01-22-0001-6533—the Arbitration.  (Pl.'s Ex. 2).  Tyler subsequently joined Maximus as a defendant to the Arbitration and asserted claims against it for wrongful termination, fraud, and malicious intent.  (Pl.'s Ex. 4).

In the Arbitration proceedings, Maximus objected to the AAA's jurisdiction on the ground that it was not a party to the Agreement and the arbitrator ruled that Maximus had procedurally defaulted on this jurisdictional challenge.  (Pl.'s Ex. 6).  On February 22, 2024, after Maximus filed the FAC in this case, the arbitrator ruled that the Arbitration would proceed "[u]nless enjoined by [this] Court."  (Pl.'s Ex. 8, at 3).

Tyler also testified at the evidentiary hearing, and she seemingly abandoned direct-benefits estoppel as her theory for binding Maximus to the Agreement.  Instead, Tyler offered (and the Court received) a document entitled "Maximus U.S. Services Unemployment Insurance Division: Arizona Project Site Policies" ("AZ Site Policy Document," or "Document") as an exhibit.  (Def.'s Ex. C).  The Document contains an "Employee Acknowledgment Form" with a line for "Employee Signature," but it is unsigned.  (*Id.* at 13).

The AZ Site Policy Document states that "it provides staff with additional clarification of site-specific requirements and/or plans that are in alignment with project guidelines."  (*Id.* at 2).  The Document lists various policies for Maximus's Arizona project under the headings "Workplace Guidelines," "Communication and Privacy," "Work Schedules," "Attendance and Punctuality," and "Disciplinary Guidelines."  (*Id.* at 2–10).  However, the Document does not contain any provisions regarding arbitration.

The Court now grants Maximus's motion to the extent that it seeks a preliminary injunction for the following reasons.

## STANDARD OF REVIEW

Fed. R. Civ. P. 65 authorizes this Court to issue preliminary injunctions under its inherent equity powers.  In determining whether to grant a preliminary injunction, this Court considers "(1) whether the movant has a strong likelihood of success on the merits, (2) whether the movant would suffer irreparable injury absent a stay, (3) whether granting the stay would cause substantial harm to others, and (4) whether the public interest would be served by granting the stay." *Ohio Republican Party v. Brunner*, 543 F.3d 357, 361 (6th Cir. 2008) (quoting *Northeast Ohio Coalition for the Homeless & Service Employees International Union, Local 1199 v. Blackwell*, 467 F.3d 999, 1009 (6th Cir. 2006)).

**ANALYSIS**

All four preliminary injunction factors—likelihood of success, irreparable injury, harm to others, and public interest—weigh in favor of enjoining Tyler from prosecuting the Arbitration pending the resolution of Maximus's declaratory-judgment claim.

I.      **Substantial Likelihood of Success**

Count II of the FAC seeks a declaration under the Declaratory Judgment Act, which empowers this Court to "declare the rights and other legal relations of any interested party seeking such a declaration." 28 U.S.C. § 2201(a). Specifically, Maximus seeks a declaration that "the Agreement does not bind it to arbitrate with Tyler, either expressly or by the application of any common law doctrine." (ECF No. 20, PageID.470).

With respect to the question of whether Maximus is bound by the Agreement, "courts must use the *Erie* choice-of-law analysis—and the law dictated thereby—to determine whether an arbitration clause applies to a non-signatory." *Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 326 (6th Cir. 2024). And "[u]nder the *Erie* approach to contract interpretation, a federal court sitting in diversity begins with a conflict-of-laws analysis using the law of the State in which it sits . . . to determine the governing law, and then interprets the contract provision under that law." *Id.* at 327.

Maximus argues that Michigan's choice-of-law rules would select Michigan law, and Tyler does not meaningfully dispute this point. Further, Tyler concedes that Maximus is not a signatory to the Agreement. However, under Michigan law, "nonsignatories to arbitration agreements can still be bound by an agreement pursuant to ordinary contract-related legal principles," including "estoppel." *AFSCME Council 25 v. Wayne County*, 811 N.W.2d 4, 12 (Mich. Ct. App. 2011).

In her response to Maximus's motion for an injunction, Tyler argued that Maximus was bound by the Agreement on a theory of direct-benefits estoppel. (*See* ECF No. 22). But as the Court explained in its TRO, direct-benefits estoppel could bind a non-signatory to a contract where that non-signatory seeks to enforce the contract's benefits but avoid its burdens. *See id.* at 12 ("[A] party may be estopped from asserting that the lack of a signature on a written contract precludes enforcement of a certain clause when the party has consistently maintained that other provisions in the same contract should be enforced to benefit the party."). Here, however, Maximus does not seek to enforce the Agreement but avoid its burdens—it seeks only to do only the latter. As such, direct-benefits estoppel does not present any hurdle to the first preliminary-injunction factor.

Tyler switched tracks at the evidentiary hearing and now seemingly relies on the AZ Site Policy Document. But the Document contains no provisions addressing arbitration and Tyler fails to articulate why it binds Maximus to the Agreement under any other contract-related legal principle. Thus, it remains substantially likely that Maximus will prevail on its declaratory-judgment claim.[2]

## II.     Irreparable Injury, Substantial Harm, and Public Interest

With respect to the remaining three preliminary-injunction factors, the arbitrator in the Arbitration ruled that the Arbitration will proceed unless this Court orders otherwise. Thus, Maximus would be deprived of its right to litigate Tyler's claims in a judicial forum and would incur monetary costs if this Court does not enjoin Tyler from prosecuting the Arbitration, both of which are irreparable injuries.

---

[2] The Court need not and does not address the likelihood that Maximus will prevail on Count I.

And as the Court explained in its TRO, the only harm that Tyler would suffer if she is enjoined from prosecuting the Arbitration pending a determination of whether Maximus agreed to arbitrate her claims would be a delay in the resolution of those claims, which is not a substantial harm. And the public has an interest in ensuring that a party is not forced to arbitrate claims against it without its consent, and it is substantially likely that Maximus will be forced to do just that if this Court does not act. Consequently, the remaining three preliminary-injunction factors weigh in favor of granting a preliminary injunction.

### CONCLUSION & ORDER

All four preliminary-injunction factors weigh in Maximus's favor with respect to its declaratory-judgment claim (Count II). Accordingly, **IT IS ORDERED** that Plaintiff Maximus Inc.'s "Motion for Temporary Restraining Order and Injunctive Relief Halting Arbitration" (ECF No. 20) is **GRANTED IN PART**. Plaintiff Maximus Inc.'s motion is **GRANTED** to the extent that it seeks a preliminary injunction and is **DENIED** in all other respects.

**IT IS FURTHER ORDERED** that Defendant Apryl Tyler shall not prosecute the proceeding before the American Arbitration Association that is captioned *Apryl Tyler v. CoreStaff d/b/a Swipejobs*, No. 01-22-0001-6533, pending a judgment on Plaintiff Maximus Inc.'s declaratory-judgment claim (Count II) in this case.

**IT IS FURTHER ORDERED** that Plaintiff Maximus, Inc. is not required to give security because Defendant Apryl Tyler will not sustain costs and damages if she is found to have been wrongfully restrained.

**IT IS SO ORDERED.**


Dated: June 11, 2024                              s/Sean F. Cox
                                                  Sean F. Cox
                                                  U. S. District Judge


7

I hereby certify that on June 11, 2024, the document above was served on counsel and/or the parties of record via electronic means and/or First Class Mail.

s/Jennifer McCoy
Case Manager