UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MAXIMUS, INC.,

    Plaintiff,

Case No. 23-cv-12433

v.

Hon. Sean F. Cox
United States District Court Judge

APRYL TYLER,

    Defendant.
_____/

**OPINION & ORDER**
**GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION**
**FOR SUMMARY JUDGMENT (ECF No. 40)**

The defendant in this diversity action, Apryl Tyler, is currently pursuing arbitration against the plaintiff in this action, Maximus, Inc., that is premised on an employment contract that Maximus never signed. Maximus seeks a declaration that it is not bound by that contract, and the Court shall grant judgment for Maximus on this declaratory claim. Maximus also seeks an order permanently enjoining Tyler from prosecuting the challenged arbitration proceedings, but Maximus lacks standing to seek such relief. The Court accordingly denies Maximus's request for permanent injunctive relief.

**BACKGROUND**

The parties do not genuinely dispute the following facts. Maximus contracted with an entity called Impellam Group PLC to staff positions for it and Impellam in turn contracted with an entity called Swipejobs, Inc. to fulfill Maximus's staffing needs. Tyler had an employment relationship with Swipejobs and Swipejobs assigned her to temporarily work for Maximus. Tyler signed an employment contract with Swipejobs that contained an arbitration clause (the "Agreement") but never signed any arbitration agreement with Maximus. Swipejobs later

1

reassigned Tyler at Maximus's request after she failed to show up for work on several occasions and ultimately fired her.

Tyler subsequently initiated arbitration proceedings against Maximus (the "Arbitration") before the American Arbitration Association ("AAA") where she sought damages for her termination.[1]  The arbitrator, Steven Schwartz, purported to exercise jurisdiction over Tyler's claims based on Tyler's employment contract with Swipejobs.  Maximus challenged the AAA's jurisdiction, but Arbitrator Schwartz ruled that Maximus had procedurally defaulted on any jurisdictional challenge.  Arbitrator Schwartz also ruled that the Arbitration would proceed to a final hearing unless Maximus challenged the AAA's jurisdiction in an independent action. Maximus's and Tyler's citizenships are diverse, and this diversity action followed.[2]

Maximus's initial complaint in this action sought an order enjoining Tyler from prosecuting the Arbitration under the Federal Arbitration Act ("FAA") and a declaration that the AAA lacks jurisdiction over the Arbitration.  The same day that Maximus filed the initial complaint, it moved to permanently enjoin Tyler from prosecuting the Arbitration under the FAA and Federal Rule of Civil Procedure 65.  The Court denied Maximus's motion for permanent injunctive relief without prejudice.  The Court explained that although the FAA authorized courts to order parties to arbitrate, the Act did *not* address ordering parties *not* to arbitrate.  *See Maximus, Inc. v. Tyler* (*Maximus I*), No. 23-cv-12433, 2024 WL 340811 (E.D. Mich. Jan. 30, 2024).  The Court also clarified that permanent injunctive relief would be improper because Maximus had not yet prevailed on the merits of any claim.  *See id.*  Accordingly, Maximus's request for a permanent injunction was improper.  The record shows that, after the Court denied

---

[1] For the Arbitration, see *Tyler v. Maximus, Inc.*, No. 01-22-0001-6533 (Am. Arb. Ass'n Feb. 22, 2024).

[2] Tyler has been *pro se* throughout this action.

2

Maximus's motion for permanent injunctive relief, Arbitrator Schwartz ruled that a final arbitration hearing would take place unless this Court ordered otherwise.

Maximus then filed a two-count amended complaint that sought an order enjoining Tyler from prosecuting the Arbitration under Michigan's Uniform Arbitration Act and a declaration that the Agreement "does not bind Maximus to arbitrate any controversy with Tyler" under the federal Declaratory Judgments Act. (ECF No. 19, PageID.442). The amended complaint also sought an order enjoining Tyler from prosecuting the Arbitration "pursuant to the Michigan Uniform Arbitration Act, the All Writs Act, or this Court's inherent equitable powers." (*Id.*). Maximus then moved for a temporary restraining order and a preliminary injunction prohibiting Tyler from prosecuting the Arbitration. The Court held a hearing and temporarily restrained Tyler from prosecuting the Arbitration pending a preliminary-injunction hearing. The Court then held a preliminary-injunction hearing and enjoined Tyler from prosecuting the Arbitration pending final judgment in this case. *Maximus, Inc. v. Tyler* (*Maximus II*), No. 23-cv-12433, 2024 WL 2933420 (E.D. Mich. June 11, 2024).

Discovery in this action has now closed, and Maximus moves for summary judgment. Tyler did not respond to Maximus's motion and the Court ordered her to show cause. Tyler has not responded to the Court's show-cause order or Maximus's summary-judgment motion as of the date of this opinion and order. And the Court ordered the submission of Maximus's motion without oral argument pursuant to Local Rule 7.1(f)(2). The Court shall grant that motion in part and deny it in part for the following reasons.

## STANDARD OF REVIEW

Summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A genuine dispute of material fact exists if, taking the evidence in the light most

favorable to the non-moving party and drawing all reasonable inferences in that party's favor, 'a reasonable jury could return a verdict for the nonmoving party.'" *DeVore v. Univ. of Ky. Bd. of Trs.*, 118 F.4th 839, 844 (6th Cir. 2024) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

## ANALYSIS

Maximus seeks declaratory relief, and the Court shall grant such relief. Maximus also seeks injunctive relief, but it lacks standing to obtain it. So the Court shall deny Maximus's request for permanent injunctive relief.

**I.    Declaratory Relief**

The court shall exercise jurisdiction over Maximus's declaratory claim shall grant declaratory relief.

**A.    Jurisdiction**

Courts consider five factors in determining whether to exercise jurisdiction over a declaratory action: (1) "whether the declaratory action would settle the controversy"; (2) "whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue"; (3) "whether the declaratory remedy is being used merely for the purpose of 'procedural fencing' or 'to provide an arena for a race for res judicata'"; (4) "whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction"; and (5) "whether there is an alternative remedy which is better or more effective." *Cardinal Health, Inc. v. Nat'l Union Fire Ins. Co. of Pittsburgh, PA*, 29 F.4th 792, 796–97 (6th Cir. 2022) (quoting *Grand Trunk W. R.R. Co. v. Consol. Rail Corp.*, 746 F.2d 323, 326 (6th Cir. 1984)). Here, all five factors weigh in Maximus's favor.

Maximus asks the Court to declare that the Agreement "does not bind [it] to arbitrate any controversy with Tyler." (ECF No. 19, PageID.442). Concerning the first and second

declaratory-relief factors, the question of whether Maximus is bound by the Agreement matters because the parties dispute whether the Agreement memorializes Maximus's consent to arbitration.  Because Michigan courts do not enforce arbitral awards against parties that never consented to arbitration, resolving whether Maximus ever consented to arbitration would clarify whether it must satisfy any arbitral award.[3]  *See Radwan v. Ameriprise Ins. Co.*, 933 N.W.2d 385, 388 (Mich. Ct. App. 2018) (explaining that courts must "vacate an award if the 'arbitrator exceeded his or her powers'" and that "[a]rbitrators exceed their powers whenever they act beyond the material terms of the contract from which they draw their authority" (first quoting Mich. Ct. R. 3.602(J)(2)(c), and then quoting *Miller v. Miller*, 707 N.W.2d 341, 344 (Mich. 2005) (per curiam))).  In this way, this action is like a declaratory action where an insurer seeks a declaration that an insurance policy does not obligate it to indemnify an insured party from an adverse judgment in an action against the insured by a third-party claimant.  *See, e.g.*, *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546 (6th Cir. 2008).

Concerning the third declaratory-relief factor, "[t]he question is . . . whether the declaratory plaintiff has filed in an attempt to get her choice of forum by filing first." *Id.* at 558 (second alteration in original) (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 789 (6th Cir. 2004)).  Courts are "reluctant to impute an improper motive to a plaintiff where there is no evidence of such in the record," and there is no such evidence here.  *Id.*  Accordingly, the Court presumes that Maximus did not initiate this action for the purpose of procedural fencing.  *See also id.* ("A district court should not deny jurisdiction to a plaintiff who has not 'done any more

---

[3] Maximus argues that declaratory relief will also settle "whether the Agreement compels it to participate in the Arbitration." (ECF No. 40-15, PageID.1017).  The Court declines to reach this question because nothing in the record suggests that the Arbitration will injure Maximus in any way that cannot be remedied by a collateral attack on any arbitral award for Tyler.

than choose the jurisdiction of federal rather than state court, a choice given by Congress.'" (quoting *State Farm Fire & Cas. Ins. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986))).

The fourth declaratory-relief factor—whether declaratory relief would increase friction between state and federal courts—also weighs in Maximus's favor. The Arbitration remains pending, so no Michigan court has yet considered whether an arbitral award for Tyler would be confirmable and enforceable. Indeed, it is not clear that a Michigan court would ever reach those questions because it is not clear that Tyler would prevail in the Arbitration. Thus, declaratory relief would not "[g]ratuitous[ly] interfere[] with the orderly and comprehensive disposition of a state court litigation." *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 495 (1942).

The fifth declaratory-relief factor requires courts to consider whether some remedy other than declaratory relief would be better or more effective. Courts have considered this factor in the context of whether a declaratory plaintiff ought to repair to a state court, but nothing in the record suggest that this Court is "a clearly inferior forum to resolve" whether Maximus is bound by the Agreement. *Flowers*, 513 F.3d at 562. So, the fifth factor weighs in Maximus's favor as well.

Because all five declaratory-relief favors weigh in Maximus's favor, the Court shall exercise jurisdiction over Maximus's declaratory claim.

### B. On the Merits

Again, Maximus asks the Court to declare that the Agreement "does not bind [it] to arbitrate any controversy with Tyler." (ECF No. 19, PageID.442). To resolve whether the Agreement binds Maximus, the Court must first determine the law that applies to the Agreement. *Erie*'s framework controls this choice-of-law issue because this Court is sitting in diversity, and *Erie* instructs the Court to construe the Agreement using the same law that a Michigan court

would. *See Firexo, Inc. v. Firexo Grp. Ltd.*, 99 F.4th 304, 326–29 (6th Cir. 2024) (applying *Erie* in a diversity case to resolve whether a contract containing a choice-of-law provision and an arbitration clause bound a nonsignatory). And Michigan courts apply Michigan law to resolve whether a party ever consented to a contract regardless of whether the contract contains a choice-of-law provision or an arbitration clause, or both.[4] *See Turcheck v. Amerifund Fin., Inc.*, 725 N.W.2d 684, 687–90 & n.2 (Mich. Ct. App. 2006) (per curiam). This Court must do the same.

In its preliminary-injunction order, the Court suggested that *American Federation of State, County, & Municipal Employees, Council 25 v. Wayne County* ("*AFSCME*") supplies the substantive rule of decision here because it considered whether a nonsignatory was bound by an arbitration clause. 811 N.W.2d 4 (Mich. Ct. App. 2011). Upon further review, *AFSCME* is inapposite because it applied "ordinary contract-related legal principles" to resolve the parties' controversy as opposed to Michigan law. *Id.* at 12. The *AFSCME* court also did not announce a choice-of-law rule that applies when parties dispute whether a nonsignatory is bound by an arbitration clause; the best reading of *AFSCME* is that it applied general common-law principles because a party had asked the trial court to "declar[e] that, *under common-law contract principles*, the [contract] did not bind" it. *Id.* at 10 (emphasis added). This Court must apply Michigan law, and not general common-law principles, to resolve whether Maximus is bound by the Agreement.

Maximus is not bound by the Agreement under Michigan law because "[w]here mutual assent does not exist, a contract does not exist," and Maximus never signed the Agreement or otherwise assented to its terms. *Quality Prods. & Concepts Co. v. Nagel Precision, Inc.*, 666

---

[4] The Agreement contains a Texas choice-of-law provision, but a Michigan court would not apply Texas law to the Agreement unless Maximus was bound by the Agreement in the first instance under Michigan law.

7

N.W.2d 251, 258 (Mich. 2003).  Tyler previously argued that Maximus's acceptance of some benefit under the Agreement created an estoppel that prevented Maximus from denying that it was *not* bound by the Agreement.[5]  Maximus responded that Tyler's estoppel theory failed under *AFSCME*.  As relevant to Maximus's argument, *AFSCME* explained that acceptance-of-benefits estoppel did not bind a party to an arbitration clause under general common-law principles.  811 N.W.2d at 12.  But again, *AFSCME* does not help Maximus because this Court must apply Michigan law, and not general common-law principles, to resolve the parties' dispute.

Tyler's estoppel theory fails under Michigan law.[6]  Michigan courts generally require a party to show detrimental reliance to establish an estoppel.  *See Morales v. Auto-Owners Ins. Co.*, 582 N.W.2d 776, 780 (Mich. 1998) (discussing the elements of equitable estoppel).  But even if Maximus accepted some benefit under the Agreement, nothing in the record suggests that Tyler detrimentally relied on such acceptance.  Tyler effectively invokes *quasi*-estoppel, which "does not require a detrimental reliance per se by anyone, but instead, . . . is directly grounded upon a party's acquiescence or acceptance of a payment or benefits."  31 C.J.S. *Estoppel and Waiver* § 146 (Dec. 2024).  But the Michigan Court of Appeals has repeatedly stated that Michigan law does not recognize quasi-estoppel.[7]  *E.g.*, *Kung Chiu Chu v. Grange Ins. Co.*, No. 304603, 2012 WL 5065316, at *5 (Mich. Ct. App. Oct. 18, 2012) (per curiam) ("Michigan courts have not formally recognized the doctrine of 'quasi-estoppel . . . .'"); *Shulke v. Mason Cnty. Bd.*

---

[5] As the Court explained in its order preliminarily enjoining Tyler from prosecuting the Arbitration, Tyler advanced an alternative argument in support of her contention that Maximus was bound by the Agreement at the hearing on Maximus's preliminary-injunction hearing.  *See Maximus II*, 2024 WL 2933420, at *3.  Tyler's alternative theory remains unpersuasive for the reasons stated in that order.

[6] Tyler did not cite any Michigan law in support of her estoppel theory.

[7] That the *AFSCME* court did not apply Michigan law helps explain why it entertained acceptance-of-benefits estoppel as a viable theory of estoppel even though the Michigan Court of Appeals has opined that Michigan law does not recognize quasi-estoppel.

8

*of Comm'rs*, No. 189450, 1996 WL 33347647, at *1 (Mich. Ct. App. Dec. 17, 1996) ("[T]he Idaho Supreme Court applied a doctrine (known as 'quasi-estoppel') that has never been recognized in Michigan.").

In sum, Maximus is not bound by the Agreement and the Court shall declare as much.[8]

**II.     Injunctive Relief**

In addition to its request for declaratory relief, Maximus asks the Court to permanently enjoin Tyler from prosecuting the Arbitration. As with any judicial remedy, a party lacks Article III standing to seek injunctive relief unless such relief would remedy an "injury that has already occurred or will imminently occur" and such injury "is 'fairly traceable' to the defendant's conduct."[9] *Bowles v. Whitmer*, 120 F.4th 1304, 1310 (6th Cir. 2024) (quoting *California v. Texas*, 593 U.S. 659, 669 (2021)). Maximus argues that it would be injured in two ways absent an injunction: (1) it would lose its right to litigate Tyler's claims against it in a judicial forum; and (2) it would expend time and resources defending arbitration proceedings that cannot produce an enforceable arbitral award. But these injuries are different from the injury that gave Maximus standing seek declaratory relief.

As discussed above, Maximus has standing to seek declaratory relief because, if Maximus never consented to arbitration, then a court's confirmation and enforcement of an arbitral award for Tyler would injure Maximus. Declaratory relief would ostensibly remedy that injury because the AAA and state courts would give preclusive effect to this Court declaratory judgment. *See Aircraft Banking Systems Corp. v. Local 856, International Union, UAW*, 97 F.3d

---

[8] The Court need not address whether Maximus is bound by the Agreement based on some other theory such as its status as a third-party beneficiary because Tyler does not invoke any such theory in response to Maximus's summary-judgment motion.

[9] Although Tyler never challenged Maximus's standing, standing "can be raised *sua sponte*." *Loren v. Blue Cross & Blue Shield of Mich.*, 505 F.3d 598, 607 (6th Cir. 2007).

155, 159 (6th Cir. 1996) ("Arbitrators are not free to ignore the preclusive effect of prior judgments under the doctrines of res judicata and collateral estoppel, although they generally are entitled to determine in the first instance whether to give the prior judicial determination preclusive effect."). Now, Maximus argues that it is *also* entitled to *injunctive* relief to protect its right to litigate and its economic interests.

Even if a party may obtain injunctive relief to preserve its right to defend inarbitrable claims in a judicial forum, Maximus's assertion that it will lose that right with respect to Tyler's claims absent injunctive relief is unduly speculative. The Court held that *preliminary* injunctive relief was necessary to protect Maximus's right to litigate Tyler's claims because it was possible that a court might confirm and enforce an arbitral award for Tyler before this Court could declare that Maximus never consented to arbitration. But now that this Court has determined Maximus never consented to arbitration, the AAA's and other courts' recognition of this Court's declaratory judgment would preserve Maximus's right to litigate. (And if it were otherwise, then Maximus would lack standing to seek declaratory relief.)

The Court is also not persuaded that any economic injury to Maximus stemming from its participation in the arbitration is fairly traceable to Tyler. It is true that courts have enjoined parties from prosecuting arbitration where, absent injunctive relief, an opposing party would be "forced to expend time and resources arbitrating an issue that is not arbitrable, and for which any award would not be enforceable." *Maryland Cas. Co. v. Realty Advisory Bd. on Labor Relations*, 107 F.3d 979, 985 (2d Cir. 1997). But the Court is not aware of anything precluding Maximus from sitting out the Arbitration and collaterally attacking any award for Tyler using

this Court's declaratory judgment.[10] In other words, any economic injury that Maximus would suffer by participating in the Arbitration would be self-inflicted.[11]

Maximus is not entitled to permanent injunctive relief.

### CONCLUSION & ORDER

Maximus is entitled to a declaration that the Agreement does not obligate it to arbitrate any controversy with Tyler, but Maximus lacks standing to seek an order permanently enjoining Tyler from prosecuting the Arbitration. Accordingly, **IT IS ORDERED** that Maximus's motion for summary judgment (ECF No. 40) is **GRANTED** to the extent that it seeks judgment in Maximus's favor on Maximus's declaratory-judgment claim and is **DENIED** in all other respects. The Court **DECLARES** that the contract docketed at ECF No. 40-6 does not bind Maximus to arbitrate any controversy with Tyler.

IT IS SO ORDERED.

s/Sean F. Cox
Sean F. Cox
United States District Judge

Dated: January 24, 2025

---

[10] Maximus argued that the Court should grant *preliminary* injunctive relief because the standard that Michigan courts apply to reviewing arbitral awards is onerously high. Maximus does not renew this argument in connection with its request for permanent injunctive relief, so the Court does not consider it here. And whether this argument has merit is questionable in any event. *See Radwan*, 933 N.W.2d at 388 (explaining that courts may vacate an arbitral award based on an "error of law" that is "discernable on the face of the award itself" if, "but for the error, the award would have been substantially different" (quoting *Washington v. Washington*, 770 N.W.2d 908, 913 (Mich. Ct. App. 2009))).

[11] Maximus does not argue, and this Court does not consider, whether Maximus's participation in a proceeding to collaterally attack an arbitral award for Tyler would injure it.